IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA J. HUMBLE, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIV-08-18-D |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her application for benefits on January 14, 2005, and alleged that she became disabled on January 1, 2001, due to a breathing disorder, constant pneumonia,

autism, and back pain. (TR 64-66, 76).  At that time, Plaintiff was 33 years old, and she described previous work as a nurse's aide for fourteen years. (TR 64, 77, 89).   Plaintiff's applications were administratively denied. (TR 41, 42).  At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Kallsnick ("ALJ") on July 10, 2007, at which Plaintiff and a vocational expert ("VE") testified. (TR 211-242).  The ALJ subsequently issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 16-23). The Appeals Council declined Plaintiff's request for review of the decision. (TR 4-6).  Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied.  Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hamilton v. Secretary of Health & Human Servs.,

961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f)(2008); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

The agency determined that Plaintiff's insured status for the purpose of disability insurance benefits expired on December 31, 2005. (TR 58). Consequently, to be entitled to receive benefits, Plaintiff must show that she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of [her] insured status." Potter v. Secretary

of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993). Accordingly, the relevant time period with respect to Plaintiff's application is between January 1, 2001, the date on which she alleges she became disabled, and December 31, 2005.

III. Consultative Evaluation

Plaintiff first contends that the ALJ erred in failing to develop the record related to the effects of Plaintiff's scoliosis. Plaintiff's argument focuses on the absence of a consultative evaluation of Plaintiff by an orthopedic specialist or a pulmonologist. Plaintiff testified at the hearing that she quit working in July 2000 because she was frequently sick and had recurrent episodes of pneumonia with coughing, which caused her to miss three to four weeks of work at a time. (TR 216, 220). Plaintiff testified that she attempted to return to her previous job as a nurse's aide but that she failed the physical because she was unable to perform the lifting requirements for the job. (TR 220-221). She testified she was unable to work because of sickness and pneumonia, difficulty breathing, and back and leg pain. (TR 221). Plaintiff stated that she used a nebulizer two to four times a day, depending on how much she was coughing, anti-inflammatory medication, and over-the-counter cough and pain medications. (TR 221, 233). Plaintiff also testified that she was nervous in crowded places, had a driver's permit but never obtained a license, and had never sought counseling or medical treatment from a specialist. (TR 222-223, 235).

The medical record contains a report by a radiologist dated June 10, 1999, of

computerized tomographic ("CT") testing of Plaintiff's thorax which was interpreted as showing the presence of dextrothoracic scoliosis and a normal looking lung except for some "increased interstitial markings in the left lung base." (TR 143). A chest x-ray of Plaintiff's chest and lungs conducted on November 15, 1999, was interpreted as showing moderate dextroscoliosis of the thoracic spine and "well expanded," clear lungs. (TR 142). The record reflects that during the relevant time period Plaintiff was treated for pneumonia and/or bronchitis in February 2001 (TR 121), May 2001 (TR 119), April 2002 (TR 100, 118), March 2003 (TR 174), December 2004 (172), March 2005 (TR 169), and December 2005 (TR 206-207). During the relevant period, Plaintiff was hospitalized for four days in April 2002 for treatment of pneumonia and a miscarriage and again for five days in December 2004 for treatment of pneumonia. (TR 100, 154-155). Plaintiff's treating physicians prescribed treatment for her recurrent pneumonia, including antibiotics, asthma medications, and breathing treatments, that was successful in resolving the illness in each instance. (TR 119, 118, 170, 173, 174, 175, 206). An x-ray of Plaintiff's chest conducted in June 2007 was interpreted as showing "mild scoliosis" and "mild pectus excavatum," a congenital abnormal formation of the rib cage giving the chest a caved-in or sunken appearance. http://www.nlm.nih.gov/MEDLINEPLUS/ency/article/003320.htm.

     Plaintiff's treating family physician, Dr. Hartwig, noted in March 2003 that he advised Plaintiff she should be evaluated by an orthopedist because "people with scoliosis can get recurrent pneumonia." (TR 174). However, Plaintiff did not seek treatment by an orthopedic specialist. The ALJ recognized in his decision that Plaintiff's pulmonary problems were

attributed to her scoliosis by Dr. Hartwig. (TR 21).

An ALJ "has broad latitude in ordering consultative examinations." Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997). "The standard" for determining whether the ALJ fully developed the record "is one of reasonable good judgment." Id. at 1168. In this case, the ALJ exercised his discretion and ordered a physical consultative examination of Plaintiff. In his report of the consultative examination of Plaintiff conducted August 16, 2005, Dr. Brennan listed Plaintiff's complaints and her medical history and provided a comprehensive report of his examination of Plaintiff. Dr. Brennan reported that Plaintiff exhibited "mild, insignificant, mid-thoracic scoliosis which is dextral rotatory with the apex at approximately T-5. This is light and only visible on flexion of the axial spine on the standing position." (TR 178). Dr. Brennan also noted that Plaintiff walked with a safe and stable gait and that she exhibited normal range of motion in her extremities, normal strength in her extremities, and normal grip strength. Additionally, Dr. Brennan noted that Plaintiff's lungs were clear and exhibited equal, unlabored, and quiet respiration with no evidence of cough. (TR 178). Dr. Brennan's diagnostic impression was exertional dyspnea of unclear origin by history. (TR 179).

The ALJ also ordered consultative pulmonary function testing which was conducted on August 16, 2005. (TR 183-185). The record contained sufficient information concerning Plaintiff's scoliosis and pulmonary function, and the consultative examination reports did not indicate the need for further orthopedic or pulmonary examinations. No error occurred with respect to the ALJ's completion of the record.

IV. <u>Evaluation of the Evidence</u>

Plaintiff contends that the ALJ ignored probative evidence in the record that contradicted his conclusions and also inaccurately portrayed Plaintiff's "condition as a whole" because he focused on "brief periods of time" when Plaintiff's condition had improved. Plaintiff's Brief, at 14-15. Plaintiff points to treatment records from 1999 and 2000, a time period that precedes the date on which she alleged she became disabled. Plaintiff then points to the ALJ's decision in which the ALJ actually discussed the medical evidence preceding the date she alleged she became disabled. (TR 21). The ALJ recognized in his decision that Plaintiff had been treated for pneumonia and bronchitis prior to her alleged disability onset and that she was released by her treating physician to return to work in January 2000. (TR 21). The ALJ then noted that Plaintiff was prescribed inhaler and prescription medications and that she continued to have problems with coughing and chest congestion despite her use of inhalers. (TR 21). No error occurred with respect to the ALJ's evaluation of the evidence preceding the date on which Plaintiff alleged she became disabled.

With respect to the ALJ's consideration of the evidence during the relevant time period after she alleged she became disabled and prior to the date her insured status expired, the ALJ noted in his decision the Plaintiff's statements concerning the nature and effects of her impairments. The ALJ reasoned that "[t]he extent of the impairments she alleges for her breathing difficulty and her musculoskeletal pain is not supported by the sparse medical record." (TR 21). The ALJ pointed to the reports of the consultative physical and mental examiners, accurately noting that at her consultative physical examination Plaintiff

7

"exhibited no evidence of inspiratory or expiratory induced coughing," that her "lungs were clear to auscultation bilaterally without rales, rhonchi or wheezes," that Plaintiff walked "with a stable and safe gait at an appropriate speed and without assistive device," and that she exhibited normal strength in her upper and lower extremities and normal grip strength. (TR 21). The ALJ also noted that although Plaintiff alleged an anxiety disorder there was no record of mental health counseling or prescribed psychotropic medication. (TR 21). The ALJ accurately discussed the report of the consultative psychiatric examiner, Dr. Vaidya, who reported that Plaintiff "appeared talkative and in good spirits," she "made good eye contact and her attention span and memory appeared to be adequate," and that Dr. Vaidya opined that Plaintiff's "ability to work around people or do any kind of heavy labor was moderately impaired." (TR 21).

Although Plaintiff points to other evidence in the record with respect to Plaintiff's episodic bouts with pneumonia, the record shows that during the relevant time period Plaintiff was diagnosed with pneumonia infrequently and that each time she improved with medications and breathing treatments. Plaintiff complains that the ALJ did not explain why he relied on Dr. Brennan's opinion that Plaintiff's scoliosis objectively appeared insignificant. However, Plaintiff does not point to a conflict that required the ALJ to weigh conflicting doctor's opinions. The ALJ recognized that Dr. Hartwig had noted a connection between Plaintiff's scoliosis and her recurrent episodes of pneumonia. Dr. Hartwig did not state that Plaintiff's recurrent episodes of pneumonia, although complicated by her scoliosis, prevented her from working or adversely affected her ability to work. The record shows

Plaintiff was hospitalized in December 2004 for worsening pneumonia, and Dr. Hartwig noted five days later that Plaintiff was being discharged because she had responded to medications and was "doing well." (TR 153-155). In January 2005, Dr. Hartwig advised Plaintiff to reduce her nebulizer[1] treatments to twice a day because she was feeling better and her lungs were clear on examination. (TR 170). No error occurred with respect to the ALJ's evaluation of the evidence.

## V. RFC

The remainder of Plaintiff's brief focuses on the sufficiency of the evidence to support the ALJ's finding that Plaintiff could perform work at the light exertional level. The ALJ found that Plaintiff had an RFC for a full range of light work and that her RFC for light work was restricted by the need to work in a clean environment, by a limited ability to read, write and use numbers, by the need for a job that did not require her to do more than understand, remember, and carry out simple and some detailed instructions under routine supervision, and by the need for a job that allowed her to avoid contact with the general public. (TR 22, 238-239). Recognizing that Plaintiff's previous work as a nurse's aide was classified as medium[2] work, the ALJ found that Plaintiff was no longer capable of performing this job due to her

---

[1] A nebulizer is "[a] device used to reduce liquid medication to extremely fine cloudlike particles" and is "useful in delivering medication to deeper parts of the respiratory tract." Stedman's Medical Dictionary 1184 (27th ed. 2000).

[2] Medium work is defined as work involving lifting up to 50 pounds at a time with frequent lifting up to 25 pounds. 20 C.F.R. § 404.1567(c).

9

severe impairments and that Plaintiff had the RFC for a limited range of light work.[3] Relying on the VE's testimony, the ALJ found that there were jobs available in the economy which Plaintiff could perform in consideration of her RFC for work.

Plaintiff stated that she was diagnosed with scoliosis as a child, and she worked for many years as a nurse's aide despite her scoliosis. Additionally, she stated she took only over-the-counter pain medications when her back hurt. (TR 186). The consultative physical examiner noted that Plaintiff exhibited full range of motion, normal gait, and no evidence of limitations in movement or strength. (TR 178). Although Plaintiff testified that her "back really hurts" (TR 225) and this limits her ability to perform household chores, cook, and perform other activities, the medical record shows that Plaintiff first sought treatment for back and leg pain and was first prescribed anti-inflammatory medication for her pain complaint in June 2007, long after her insured status expired. (TR 209-210). Dr. Brennan found no objective medical evidence of a condition causing Plaintiff's subjective history of exertional dyspnea (shortness of breath). (TR 179). Plaintiff described her usual activities at her consultative psychiatric evaluation, including household chores, visiting a neighbor, reading, occasional cooking, and no problems with sleeping or eating, that were not inconsistent with the ability to perform light work. There is substantial evidence in the record to support the finding that Plaintiff's severe impairment due to scoliosis did not

---

[3]Light work is defined as work involving lifting no more than 20 pounds at time with frequent lifting of 10 pounds or more and mostly walking or standing or sitting with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

prevent her from working at the light exertional level.

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not consider the effects of Plaintiff's use of a nebulizer for breathing treatments. Plaintiff points to an unpublished opinion, Klitz v. Barnhart, 180 Fed. Appx. 808, 2006 WL 1389303 (10th Cir. May 17, 2006)(unpublished op.), in which the Tenth Circuit Court of Appeals reversed the district court's decision and remanded the case for further administrative proceedings. In Klitz, the court found that the ALJ did not develop sufficient details concerning the claimant's use of a home nebulizer for her asthma and chronic obstructive pulmonary disease. In that case, the claimant testified that she used the nebulizer two or three days a week, two times on those days, and that the process took fifteen to twenty-five minutes. Id. at *2. The court noted that it was unclear whether the nebulizer treatments could be conducted outside of the workday. If not, the court reasoned that the "fifteen to twenty-five minute process of using the nebulizer one or two times a day on two or three days a week may be disruptive of a normal work day and affect [the claimant's] ability to perform the jobs the VE identified and on which the ALJ based his decision." Id.

In this case, unlike the circumstances in the Klitz decision, there is no evidence that Plaintiff uses the nebulizer[4] on a continual basis or that the process of using the nebulizer would interfere with a job. At her consultative psychiatric evaluation in October 2005, Plaintiff stated that she had occasional coughing spells and occasional difficulty breathing

---

[4]Plaintiff uses the nebulizer to deliver albuterol. (TR 177, 236).

and that she used the breathing machine "when her breathing gets bad." (TR 186). She testified at the hearing that the albuterol used in her nebulizer provides her some relief "when I take it...." (TR 232). She testified that she used the nebulizer at home four times a day when she was "really coughing" and two times a day "when it's not as bad." (TR 221-222). She testified the nebulizer treatments took ten to 15 minutes. (TR 222). The medical record does not indicate that Plaintiff has been prescribed the nebulizer for use on a continual basis. Rather, the record indicates that she uses the nebulizer during episodic periods of increased cough and congestion. (TR 153, 170, 172, 198, 207). In March 2005, Plaintiff was diagnosed with pneumonia, and her treating physician, Dr. Hartwig, prescribed antibiotics. (TR 208). Approximately one week later, Dr. Hartwig noted that Plaintiff's pneumonia had resolved with the use of the antibiotic medication. (TR 208). There is no indication of further medical treatment of Plaintiff until December 2005. (TR 207). Accordingly, the ALJ did not err in failing to include restrictions on Plaintiff's ability to work as a result of her use of a nebulizer for breathing treatments. Because there is substantial evidence in the record to support the ALJ's decision and no error occurred in the ALJ's evaluation of the evidence, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and

Recommendation with the Clerk of this Court on or before _____December 8th_____, 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___18th___ day of _____November_____, 2008.

*[signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE